UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

CASE NO: 5:26-CR-0126
**DEFENSE SENTENCING MEMORANDUM**

JAMES YERDON,

Defendant.

---

On May 7, 2026, James Yerdon ("Jim") pled guilty to a two-count Information charging him with receiving and possessing child pornography. (Text Minute Entry May 7, 2026.) There is a written plea agreement in the case. (Dkt. No. 28.) Sentencing is scheduled for November 9, 2026. (Dkt. No 33.) Jim has been in primary federal custody since his arrest on May 13, 2025.

The United States Probation Department prepared a Presentence Investigation Report (*hereinafter* "PSR") on August 10, 2026, in anticipation of sentencing. (Dkt. No. 31.) The PSR sets forth a total offense level of 37, a Criminal History Category of I, and a Guideline sentencing range of 210-262 months. *Id.* ¶¶ 53, 60, 93. The mandatory minimum sentence is 180 months (fifteen years). *Id.* ¶ 92.

The PSR contains nineteen paragraphs discussing the investigation that led to Jim's arrest. Notably, fifteen of those paragraphs provide details of offenses for which Jim is not facing federal charges. (Dkt. No. 31 ¶¶ 13-19, 21-22, 24-29.) Those paragraphs describe hands-on offenses involving minor victims including C.D., T.D, and V.R. None of the pornographic images that Jim is charged with receiving and possessing feature C.D., T.D., V.R., or any other child personally known to Jim.[1] The conduct described in those fifteen paragraphs of the PSR is the subject of criminal cases pending in other courts. In Albany County, Jim has pled guilty to one count of Course of Sexual Conduct in the First Degree for his abuse of V.R. Defense counsel

---

[1] After searches of multiple devices during the investigations, the only inappropriate images located of C.D, T.D., or V.R. were of V.R. The United States Attorney's Office has classified those images as "child erotica" rather than child pornography and they are not the basis of the charges before this Court. (Dkt. No. 31 ¶ 31.)

has been advised that the prosecutor in that case intends to request a twenty-year sentence. In Oswego County, Jim has pled guilty to one count of Rape in the First Degree for his abuse of C.D. *Id.* ¶ 59. He will be sentenced to seven years in prison for that offense, followed by twenty years of post-release supervision. *Id.*

The defense respectfully submits this memorandum in support of a sentence that is sufficient, but not greater than necessary, to provide appropriate punishment for the crimes that are the subject of the federal criminal case. Specifically, the defense requests that this Court impose a term of imprisonment of 180 months with a recommendation to the Bureau of Prisons to house Jim at FMC Butner, no fine or additional special assessments, and five years of supervised release following incarceration.

## I. THE FACTORS LISTED IN 18 U.S.C. § 3553(a) WEIGH IN FAVOR OF A SENTENCE OF 180 MONTHS' IMPRISONMENT.

In determining a sentence, a court must consider the statutory concerns listed in 18 U.S.C. § 3553(a). Those factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; and (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a). Here, these factors weigh in favor of imposing a sentence of 180 months of imprisonment.[2]

### A. The Nature and Circumstances of the Offense

One factor the Court must consider in sentencing is the nature and circumstances of the offense. All offenses involving child pornography are extremely serious. Notably, however,

[2] The defense contends that all of the factors under 18 U.S.C. § 3553(a) weigh in favor of a below-Guideline sentence of 180 months. However, there is not space within the page limits to address each factor. This memorandum addresses only the most pertinent factors. If the Court has questions about factors not addressed in this memorandum, counsel will discuss those factors at the sentencing hearing or in a supplemental sentencing memorandum.

Jim's federal offense conduct did not include aggravating factors such as active trading of child pornography, membership in trading groups, distribution of images, or online discussions of child abuse. (Dkt. No. 28 ¶ 5; Dkt. No. 31 ¶¶ 30-31, 41-42.[3]) Jim's collection of child pornography images was much smaller than the average offender's. While the median non-production child pornography offender possesses 4,265 images (*see* Charles R. Breyer, Patricia K. Cushwa & Jonathan Wroblewski, U.S. Sent'g Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* 30 fig. 13 (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_NonProduction-CP.pdf [https://perma.cc/Q2HA-HXE7]), Jim possessed only three videos and one still image. (Dkt. No. 31 ¶ 45.[4]) Jim's hand-on offenses are not before this Court and are being addressed in proceedings in Albany County and Oswego County. As noted above, the victims of those offenses are not depicted in the three videos and one still image that Jim possessed. Thus, the nature and circumstances of the federal offense weigh in favor of the Court imposing a sentence of 180 months.

**B. The History and Characteristics of the Defendant**

Another factor the Court must consider is the history and characteristics of the defendant. As the PSR notes, Jim's troubled childhood is a factor that weighs in favor of a below-Guideline sentence. (Dkt. No. 31 ¶ 110.) Jim's father suffered from Post Traumatic Stress Disorder because of his military service in Vietnam. *Id.* ¶ 66. He drank heavily throughout Jim's childhood. *Id.* Jim's parents argued frequently. *Id.* Jim's father directed his anger at Jim more frequently as Jim grew older and began questioning his sexual identity. *Id.* Jim's father verbally abused him

---

[3] Paragraphs 41-42 of the PSR are cited to show that Probation did not apply a distribution enhancement under § 5G2.2(b)(3).

[4] As the PSR notes, this number of images would normally result in an enhancement of only three levels. (Dkt. No. 31 ¶ 45.) However, the parties stipulated in the plea agreement to a five-level enhancement for the number of images possessed.

whenever he appeared or acted effeminate. *Id*. In addition to these difficulties with his father, Jim was subjected to sexual abuse by several different perpetrators. First, when he was six and seven years old, he was sexually abused by a teenage boy who lived near Jim's grandparents. *Id.* Jim spent the summers with his grandparents, so it was easy for the teenager to gain access to him. *Id*. At about the same age, Jim was sexually abused by a male hospital worker. *Id*. Later, between the ages of nine and eleven, Jim was sexually abused by an older male cousin. *Id*. District courts commonly grant sentencing reductions where a defendant was victimized as a child. *See, e.g.*, *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007); *United States v. Patzer*, 548 F. Supp. 2d 612 (N.D. Ill. 2008); *United States v. Somerstein*, 20 F. Supp. 2d 454 (E.D.N.Y. 1998); *United States v. Ayers*, 971 F. Supp. 1197 (N.D. Ill. 1997).

Jim's mental and emotional conditions also weigh in favor of a below-Guideline sentence. (Dkt. No. 31 ¶ 110.) He has suffered from feelings of depression, anxiety, and self-loathing for his entire life. *Id*. ¶ 72. He initially sought counseling when he was fifteen years old but did not return after the therapist behaved sexually inappropriately with him. *Id*. ¶¶ 66, 73. He reengaged with counseling while attending college at SUNY Potsdam and has sought treatment on and off throughout his life during various periods of situational depression. *Id*. ¶ 73. Jim never felt comfortable, however, discussing his sexual addiction in treatment because of the stigma associated with it. *Id*. In 1999, he began searching for help on the internet. *Id*. ¶ 74. As Jim describes it, these internet searches caused him to 'fall into darkness.' *Id*. ¶ 74. In 2004, amid the stress of the end of his first marriage, Jim pled guilty to the New York state D Felony of Promoting an Obscene Sexual Performance by a Child Less Than 16 Years Old after his possession of 3,071 images of child pornography was discovered. *Id*. ¶¶ 58, 74. He was sentenced to ten years of probation. *Id*. ¶ 58. He performed well on supervision and was discharged from probation early. *Id*. For over a decade, Jim's mental health was stable and he did

not commit any crimes. The situation, however, began to deteriorate in about 2019. Jim had remarried and it slowly became clear that his wife was an alcoholic, suffered from sexual trauma, and was addicted to spending money. *Id*. ¶ 68. The financial stresses were particularly hard on the couple's relationship. In January 2023, things grew even worse when Jim's adult stepson overdosed on fentanyl-laced marijuana and died. *Id*. ¶¶ 67-68. As it had during the breakup of his first marriage in 2004, Jim's mental health deteriorated. Once again, he fell into the darkness.

Since his arrest in May 2025, Jim has been actively confronting his behavior and trying to address its root causes. He has engaged with such mental health treatment as has been available to him in county jails, including an interactive journaling program and a five-week anger management program. (Dkt. No. 31 ¶ 76.) He is interested in obtaining intensive treatment and has been researching available programs. *Id*. ¶¶ 36, 77. He has found several inpatient facilities that specialize in sexual addiction treatment and looks forward to enrolling in such a program when he is eventually released from prison. *Id*. He advised the Probation Office that he wishes that such programs had been available to him twenty years ago. *Id.* He is extremely remorseful for his conduct, painfully aware of the damage it caused because of his own experiences as the victim of childhood sexual abuse. *Id*. ¶ 37.

Jim's medical conditions also weigh in favor of a below-Guideline sentence. Jim has suffered from diabetes for fifteen years. (Dkt. No. 31 ¶ 70.) While housed at Cayuga County Jail, Jim was receiving Jardiance and Mounjaro to treat his diabetes. *Id*. However, he has not received these medications since he was moved to Oneida County Jail on July 31, 2026. Jim reports that his blood sugar readings have been in the 350-500 range for the last several weeks and that a scratch on his hand is taking a substantial amount of time to heal, as is generally true when his diabetes is uncontrolled. Jim's weight has fluctuated quickly since his transfer to Oneida County Jail, another symptom of unmanaged diabetes. In addition to diabetes, Jim suffers from chronic

neck, back, and shoulder conditions as the result of a motor vehicle accident and a workplace injury. *Id.* ¶ 71. These conditions were exacerbated when he was assaulted by inmates at Oneida County Jail on August 7, 2026. A defendant's poor medical condition is an appropriate factor for the Court to rely upon when imposing a below-Guideline sentence. *See United States v. Alemenas*, 553 F.3d 27 (1st Cir. 2009) (downward variance based on defendant's chronic neck pain and mental health); *United States v. McFarlin* (8th Cir. 2008) (downward departure based on defendant's mental health and heart disease); *United States v. Weintraub*, 371 F. Supp. 2d 164, 167 (D. Conn. 2005) (sentencing court granted substantial downward departure based on defendant's poor health); *United States v. Jimenez*, 212 F. Supp. 2d 214 (S.D.N.Y. 2002) (downward departure where defendant suffered brain aneurism); *United States v. Kloda*, 133 F. Supp. 2d 345 (S.D.N.Y. 2001) (downward departure where defendant had health problems); *United States v. Hammond*, 37 F. Supp. 2d 204 (E.D.N.Y. 1999) (downward departure where defendant suffered from HIV); *United States v. Blarek*, 7 F. Supp. 2d 192 (E.D.N.Y. 1998) (downward departure based on defendant's health) *United States v. Gigante*, 989 F. Supp. 436 (E.D.N.Y. 1998) (downward departure where defendant suffered from heart condition).

Finally, Jim's experiences during pretrial detention weigh in favor of a below-Guideline sentence. Jim was transferred from Cayuga County Jail to Oneida County Jail on July 31, 2026. He contends that he was transferred because of his assistance to and advocacy for a fellow inmate at Cayuga. Upon arrival at Oneida County Jail, other inmates were informed (by unknown sources) of the nature of the charges against Jim. On August 7, 2026, Jim was repeatedly attacked in the common room of his pod at the jail by a group of inmates. The Office of the Federal Public Defender has obtained video footage of the final phase of the assault, which shows an inmate throwing Jim to the floor, punching him, and kicking him. As noted above, this attack exacerbated Jim's preexisting neck, back, and shoulder issues. He has been experiencing

severe headaches ever since the assault and has not received proper medical treatment for his injuries. Therefore, Jim's history and characteristics weigh in favor of a sentence of 180 months of imprisonment.

### C. The Need to Avoid Unwarranted Sentence Disparities

The Court must also consider the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct. According to statistics maintained by the United States Sentencing Commission, the average length of imprisonment imposed on defendants in the same criminal history category and with the same total offense level as Jim during the last five fiscal years is 151 months. (Dkt. No. 31 ¶ 113.) The median length of imprisonment imposed on such defendants is 144 months. *Id*. Thus, a sentence of 180 months of incarceration would avoid unwarranted sentencing disparities.

## III. THE COURT SHOULD IMPOSE A BELOW-GUIDELINE SENTENCE BECAUSE GUIDELINE § 2G2.2 DOES NOT ACCURATELY REFLECT OFFENDERS' CULPABILITY.

The Guideline sentencing range in this case is based on Sentencing Guideline 2G2.2. (Dkt. No. 31 ¶ 40.) Many of the sentencing enhancements set forth in U.S.S.G. § 2G2.2 have been rejected by federal courts. This is because the sentencing enhancements used to achieve the advisory guideline range under § 2G2.2 are not the product of any careful study or empirical data. Under normal circumstances, the Sentencing Commission bases its determinations on empirical data. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007); *see also Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that even though the Guidelines are advisory rather than mandatory, they are [mostly] … the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.") However, the child pornography Guidelines were not adopted under normal circumstances. Rather, they were politically dictated by Congress and are contradicted by empirical evidence.

When Guidelines are not based on an empirical approach, but are instead guided by statutory directives, a court is not presented with the ordinary case in which the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. *See e.g.*, *Kimbrough*, 552 U.S. at 109 (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)); *see also Gall*, 552 U.S. at 46 n.2 (noting that not all Guidelines are tied to empirical evidence). In these cases, it is not an abuse of discretion for a District Court to conclude when sentencing a particular defendant that application of the guideline yields a sentence greater than necessary to achieve § 3553(a)'s purposes even in a mine-run case. *Kimbrough*, 552 U.S. at 109.

In 2013, the Sentencing Commission published a report on the child pornography guidelines. *See U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012)* ("C.P. Report"). In its report, the Commission stated, "the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." C.P. Report at ii.[5]

In *United States v. Dorvee*, a defendant pled guilty to distribution of child pornography and sentenced to a term of 240 months, the statutory maximum. *United States v. Dorvee*, 616 F.3d 174, 178 (2d Cir. 2010). The sentencing court appeared to be "convinced that [the defendant] was a 'pedophile' likely to engage in sexual conduct with a minor." *Id*. at 183. In vacating the sentence, the Second Circuit found and identified "certain serious flaws" in § 2G2.2. *Id*. at 182; *see also United States v. Jenkins,* 854 F.3d 181, 188 (2d Cir. 2017). Specifically, the Court found that applying enhancements that are inherent to the crime and, consequently, apply

[5] As a result of recent changes in internet technology "four of the six sentencing enhancements in § 2G2.2, those relating to computer usage and the type and volume of images possessed by offenders, which together account for 10 offense levels, now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability." *C.P. Report at iii*.

to the vast majority of defendants, such as § 2G2.2 enhancements, "eviscerates the fundamental statutory requirement in § 3553(a)." *Id.* at 187. *Dorvee* encouraged district judges to recognize their broad discretion in sentencing offenders under the § 2G2.2 guideline, calling it an eccentric guideline of highly unusual provenance, which, unless carefully applied, can easily generate unreasonable results. *Id.* at 188. Similarly, in *United States v. Tutty*, the Second Circuit reversed a sentence that followed § 2G2.2 enhancements resulting in a sentence of 168 months for a first-time offender. *United States v. Tutty*, 612 F.3d 128, 129-130 (2d Cir. 2010). The Second Circuit held that the district court failed to recognize its authority to depart from the guideline range of imprisonment based on policy considerations. *Id.* at 129.

Several of the § 2G2.2 enhancements that the Second Circuit has criticized were applied to Jim's offense: (1) a two-level enhancement for material involving children under the age of 12; (2) a four-level enhancement for material involving sado-masochistic images or sexual abuse/exploitation of an infant or toddler; (3) a two-level enhancement for use of a computer; and (4) five levels pursuant to 2G2.2(b)(7)(A) for more than 600 images. (Dkt. No. 31 ¶¶ 41, 42, 44, 45.) These enhancements were criticized in *Dorvee, Tutty*, and *Jenkins* because the court recognized that they apply in virtually every case. *Dorvee*, 604 F.3d at 96; *Tutty*, 612 F.3d at 132; *Jenkins,* 854 F.3d at 188. As such, they are not properly "enhancements" because they are not indicative of egregious behavior. Rather, they are indicative of the mine-run child pornography offense. Taken together, these enhancements raise the Guideline in Jim's case from 51-63 months to 210-262 months. Accordingly, this Court should impose a below-Guideline sentence of 180 months.

## IV. THE COURT SHOULD IMPOSE A SUPERVISED RELEASE TERM OF FIVE YEARS.

The Court is required to impose a term of supervised release in this case. (Dkt. No. 31 ¶ 97.) The mandatory minimum term of supervised release is five years and the maximum is life.

*Id*. Although the Guidelines formerly recommended that courts impose lifetime supervised release on sex offenders, the Sentencing Commission has removed that recommendation. As noted above and in the PSR, Jim will be placed on twenty years of post-release supervision in the Oswego County case. *Id*. ¶ 59. It would be inefficient to impose a lengthy period of federal supervised release on an individual who is already being supervised by another entity. The defense therefore requests that the Court impose a five-year term of supervised release.

## V. JUDICIAL RECOMMENDATION

The defense requests that, due to Jim's medical conditions, the Court recommend that the Bureau of Prisons house Jim at the Federal Medical Center in Butner, North Carolina.

## VI. CONCLUSION

For the reasons discussed above, the defense respectfully requests that the Court impose a term of imprisonment of 180 months with a recommendation to the Bureau of Prisons to house Jim at FMC Butner, no fine or additional special assessments, and five years of supervised release following incarceration.

DATED: October 19, 2026

ERIC K. SCHILLINGER
FEDERAL PUBLIC DEFENDER

By: /s/ Courtenay K. McKeon
Assistant Federal Public Defender
Bar Roll No. 515841
Clinton Exchange, 3rd Floor
4 Clinton Street
Syracuse, New York 13202
(315) 701-0080

cc: Adrian LaRochelle, AUSA (by ECF)
Kristin L. Bent, SUSPO (by email)